(Decided July 15th, 1859.)

# JOSEPH P. CANTWELL *vs.* JOHN OWENS.

Art. 4, sec. 19, of the Constitution, provides for the election of justices of the peace by the people, and declares, that "in the event of a *vacancy* in the office of justice of the peace, the Governor shall appoint a person *to serve until the next regular election of said officers.*" HELD:

1st. That the appointee of the Governor, to a vacancy in such office, holds till the next regular election of justices of the peace, and the appointment must be made by the Governor alone, and not by the Governor and Senate, under sec. 12, of Art. 2.

2nd. The power of removal of officers for incompetency or misconduct, conferred upon the Governor by Art. 2, sec. 15, applies only to such offices as he has power to fill by original appointment, for terms of years, and does not embrace justices of the peace.

Where the Constitution speaks in *plain* language, in reference to a *particular matter*, the courts have no right to place a different meaning on the words employed, because the literal interpretation may happen to be inconsistent with other parts of the instrument, in relation to *other subjects*.

In no case is the power of removal of any officer discharging judicial functions, conferred upon the Governor, except by Art. 30, of the Bill of Rights, and secs. 4 and 9 of Art. 4, of the Constitution, upon an address of the General Assembly.

APPEAL from the Circuit Court for Cecil County.

This was an application made, on the 22nd of July 1858, by the appellant, for a rule upon the appellee to show cause why a *mandamus* should not issue, commanding him to deliver up to the appellant, the office of justice of the peace for the third election district of Cecil county, and the docket and papers of William Hanes, deceased, the former justice for said district.

The rule was laid, and the appellee having shown cause, an agreed statement of facts was filed, upon which the case was submitted to the court below. The facts thus agreed on are briefly these: On the 4th of November 1857, the appellee was regularly appointed and commissioned by the Governor, (LIGON,) a justice of the peace for the third election district of Cecil county, *to fill a vacancy* occasioned by the death of William Hanes, who had been regularly elected and commissioned as such justice. This appointment was made during the *recess* of the Legislature, and on the 16th of February 1858, during the *session* of the Legislature, the appellant was *nominated* by the Governor, (HICKS,) and *with the advice and consent of the Senate, appointed* and *commissioned* to fill the same vacancy. Both parties so appointed took the oaths required by the Constitution and laws. It was agreed, that if the court should be of opinion that the appointment of the appellee authorized him to hold and exercise the office until the next general election of delegates for Cecil county, the judgment should be in his favor with costs; but if the court should be of opinion that the appointment of the appellee only authorised him to hold and exercise said office until the Governor, by and with the advice and consent of the Senate, should appoint a person to said office, and that the appointment of the appellant superseded that of the appellee, then the judgment to be in favor of the appellant with costs; and either party to have the right of appeal.

The court (PRICE, J.) rendered a *pro forma* judgment in favor of the appellee for costs, and that he hold the said office until the next general election of delegates, from which this appeal was taken by the appellant.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Jas. T. McCullough* for the appellant:

The decision of this case depends entirely upon the construction of the Constitution, with reference to the power of the Governor to appoint justices of the peace, in cases of vacancies. The ground assumed by the appellee is, that Art. 4, sec. 19, should be construed independently of any other part of the Constitution. The language of that section is:—"In the event of a vacancy in the office of justice of the peace the Governor shall appoint a person to serve as justice of the peace, until the next regular election of said officers." As nothing is here said about sending the appointment to the Senate to be confirmed, the inference is drawn, that the Governor has the power, independently of the Senate to fill the vacancy till the next regular election of justices of the peace, and that having once made the appointment he has no power of removal over his appointee.

This construction is at variance with principles long established for the proper interpretation of legal instruments and statutes. "In construing a statute the intention of the lawgiver and the meaning of the law are to be ascertained by viewing the whole and every part of the Act." *Broom's Maxims*, 449, and the authorities there cited. In giving interpretation to other portions of the Constitution this court has applied the same principle. "Constitutions are not to be interpreted according to the words in *particular clauses*. The *whole* must be considered with a view to ascertain the sense in which the words are employed, and its terms must be taken in their ordinary and common acceptation, because they are presumed to have been so understood by the framers and the people who adopted it. This is unquestionably the correct rule of interpretation." 7 *Md. Rep.*, 147, *Manly vs. The State*. In application of these well settled principles to this case, it is necessary to construe Art. 4, sec. 19, in connection with any other part of the Constitution, which may have ap-

plication to the same subject, and show the intention of its framers.

In sec. 12 of Art. 2, which treats of the general power of the executive, we find this language: "In case of any vacancy, during the recess of the Senate, in *any office* which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force till the end of the next session of the Legislature, or till some other person is appointed to the same office, whichever shall first occur, and the nomination of the person thus appointed during the recess, or of some other person in his place, shall be made to the Senate within thirty days after the next meeting of the Legislature." Is this section to have a general application to "*any office* which the Governor has power to fill," or is it to be taken with limitations and exceptions? The language is certainly comprehensive enough to apply to every office which he has power to fill, whether existing under the Constitution itself, or under some statute of the State. There is nothing in the Constitution to show, that the office of justice of the peace was intended to be excepted from this general provision. In the event of a vacancy in the office, it becomes an office which the Governor has power to fill, and, by the terms of this section, the nomination of the justice, appointed by him during the recess, or of some other person in his place, should be made to the Senate within thirty days after the next meeting of the Legislature. If this be the true construction, it follows, that Owens is not entitled to the office, and every official act he has performed since Cantwell has been commissioned and qualified, is of no legal force or authority. This construction is that which has been given by the Executive Department, since the adoption of the Constitution up to the last session of the Legislature, as shown by the Journals of the Senate.

But if it is admitted, for the sake of the argument, that the Governor has the power to make the appointment of a justice of the peace, in the event of a vacancy, independently of the Senate, it would seem that, under Art. 2, sec. 15, he nevertheless had a right to remove his first appointee and put another

in his place for the residue of the unexpired term. The language of this section is, that he "may remove for incompetency or misconduct, all civil officers who receive "appointments from the Executive for a term of years." The expression, "term of years," is a legal phrase and well understood. 2 *Bl. Com.*, 143. *Wharton's Law Lexicon,* "*Terms of years,*" *page* 1001. It is here used in contradistinction to appointments *during good behaviour* or *for life*. It is true, that in the Constitution itself, there are no officers named, who hold their appointments by a life tenure. It cannot, however, be shown that the Legislature has not the power to create offices with such a tenure, and it is very clear that under the organic law of the State, such power might be exercised by the Legislature. The use of these words, "term of years," could imply nothing else. If there can be no other civil officers but those who hold for a term of years under our Constitution, then the use of the expression "term of years," in this section, was without meaning or point. This cannot be presumed, and to be properly understood, these words can only be construed in the sense above indicated. They mean any period of time whether more or less than a year. It is called a *term,* *(terminus,)* because its duration is bounded, limited and determined. The appointment of a justice of the peace, until a justice shall be elected at the regular election of those officers, is therefore an appointment for a "term of years." But is a justice of the peace a *civil officer?* The word *civil* is often used as opposed to *military*. In this section the expression, "civil officers," is evidently used in contrast with "military officers," who are referred to in the first part of the same section, and certainly includes all officers of the State, who are not military officers. A justice of the peace is, therefore, beyond all question a civil officer. But it may be said, that the Governor has no right to remove a justice of the peace, appointed by him to fill a vacancy, unless he shall have been convicted of incompetency or misconduct, by a court of law. Such a view of the matter does not appear from sec. 15, Art. 2, or any other part of the Constitution. On the contrary, the very reverse is manifest from the section itself. In the

case of military officers, the Governor has no power to remove, except in pursuance of the sentence of a court-martial. The Constitution seems to be intended, in regard to civil officers, to give the Governor authority to inform himself as to their qual-ifications, incompetency or misconduct, in any way he may be disposed to take. The fact, that the sentence of a court is made necessary, where military officers are concerned, and is not named in connection with civil officers, shows, beyond a doubt, that the framers of the Constitution did not design to make a conviction in a court of law necessary, before the Gov-ernor could exercise the power of removal. *Expressio unius est exclusio alterius.*

It would seem therefore, that a person appointed by the Governor, as justice of the peace, to fill a vacancy, being a civil officer and appointed for a term of years, may be remov-ed for incompetency or misconduct before the expiration of the term, and another person put in his place; and that the Governor having exercised the power in this case, is not bound to go into a judicial investigation, in regard to alleged incom-petency or misconduct, and that his exercise of power, in this respect, cannot be called in question. If this view is correct it follows, that the appellant is entitled to the office, and that the judgment of the court below should be reversed and a *mandamus* be issued, to remove the appellee and put the ap-pellant in office, and place the docket and papers of William Hanes, deceased, in his hands, or those of his successor in of-fice, in accordance with the Act of 1856, ch. 86.

*John C. Groome, H. McCullough* and *John B. Rowan,* for the appellee,

The answer to the question, whether the Governor, when he fills a vacancy in the office of justice of the peace, under sec. 19, of Art. 4, during the recess of the Legislature, must submit such nomination to the Senate within thirty days after the next meeting of the Legislature, under sec. 12, of Art. 2, is so plain, that it is difficult to imagine how a doubt can arise upon the subject. The language of this 19th sec. is: "In the event of a vacancy in the office of justice of the peace, the

Governor shall appoint a person to serve as justice of the peace until the next regular election of said officers.'' In this section alone lies the Governor's power, and it is vested in him alone without any limitation or supervision, or advice or consent, by or from any other branch of the Government, and thereby the term of office is also definitely fixed until the next regular election. In no other part of the Constitution do we find any power vested in the Governor in regard to the appointment of justices of the peace, or to filling vacancies in that office. Where then is the doubt or difficulty in the case?

It is said sec. 12, of Art. 2, provides, that the nomination shall be submitted to the Senate. But that section makes no mention of justices of the peace. It only refers to such appointments wherein the commission shall continue in force until the end of the next session of the Legislature, or till some other person is appointed to the same office, whichever shall occur first. But this is not one of those vacancies which the Governor can fill only to the end of the next Legislature, but it is an office which is to continue till the next regular election, by the express language of the Constitution. Indeed, this 12th sec. does not apply to a case of this sort at all. It provides that in case of any vacancy during the recess of the Senate, in any *office* (not any *vacancy*) which the Governor has power to fill, he shall appoint some suitable person to said office till the end of the next session of the Legislature. Neither is it in the case of *every* office where a vacancy may occur that he has this power, but only in those offices *which he has the power to fill*. Has the Governor a right to fill the office of justice of the peace any where given him by the Constitution? He may fill a vacancy in that office, and when he does so, the appointee holds till the next regular election, but he cannot appoint a justice of the peace in the first place. Sec. 11, of Art. 2, shows what officers the Governor may originally appoint: ''He shall nominate, and by and with the advice and consent of the Senate, appoint all military and civil officers of the State, whose appointment or election is not otherwise herein provided for.'' The election of justices of the peace is expressly conferred upon the people, and therefore that officer

comes within the exception, and is not one of those whom the Governor, by and with the advice and consent of the Senate, has authority to appoint. Then immediately following comes sec. 12, already quoted, that in case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, or, in other words, in any of the offices which, by sec. 11, he is clothed with power to fill, then he shall appoint some suitable person, whose commission shall continue in force till the end of the next session of the Legislature, and the nomination of the person thus appointed, during the recess, or some other person in his place, shall be made to the Senate within thirty days, &c. This provision, when made applicable to the officers mentioned in sec. 11, is perfectly consistent, for if the advice and consent of the Senate be deemed necessary in the appointment of the original officer, they are equally important in regard to the officer who may be appointed to fill the vacancy. But in the original election of justices of the peace, the concurrence of the Senate is not deemed necessary, and there is, therefore, no reason why it should be required in regard to appointments to fill such vacancy. Besides, it is perfectly preposterous to contend, that an office which the Constitution *expressly* declares shall continue *until the next regular election*, (whether made while the Senate is in session, or during its recess,) is an office which, by *implication*, the Governor can fill only until the end of the next session of the Legislature: *expressum facit cessare tacitum*.

But again, the judges of the Circuit courts and Court of Appeals are also elective by the people, and the mode of filling vacancies is also prescribed by the Constitution in sec. 25, of Art. 4. There, as in the case of vacancies in the office of justices of the peace, the power is conferred upon the Governor to appoint a person to fill said office until the next general election for delegates thereafter, but the power is only to be exercised by and with the advice and consent of the Senate. So with regard to vacancies in the office of Judge of the Orphans Court, Commissioners of Public Works, Comptroller of the Treasury, Treasurer, and probably of other officers. Why

then this marked distinction between such officers and justices of the peace? Why make any express provision about submitting any of these officers to the Senate, if sec. 12, of Art. 2, is to be regarded as a general provision referring to and including all appointments by the Governor, and making it necessary that they shall all be referred to the Senate for confirmation and approval? Does not the rule *expressio unius est exclusio alterius* apply with great force here? for why specially provide for the Senate's concurrence in the appointments to fill vacancies in the case of some elective offices, and not of all, if the Constitution intended that they should all be subjected precisely to the same process?

But the appellant contends, that admitting we are right on this point, yet the Governor, under sec. 15, of Art. 2, had a right to remove Owens and appoint another in his place for the residue of the unexpired term. This proposition, in these broad unqualified terms, we deny, and say this section gives no countenance to it whatever. Indeed we doubt whether, in any case, the Governor alone can remove an officer who has been appointed to fill a vacancy in an originally elective office. Sec. 11, of Art. 2, points out what military and civil officers the Governor may, by and with the advice and consent of the Senate, appoint, and they are such whose appointment or election is not otherwise provided for; then sec. 12 provides for filling vacancies in such offices; sec. 13 restricts him from re-nominating the same person after rejection, at the same session, unless at the request of the Senate, or from appointing him during its recess; sec. 14 prescribes the period within which all civil officers, appointed by the Governor and Senate, shall be nominated, and when their terms shall commence and when terminate, to wit, in two years, unless sooner removed, &c.; and then comes sec. 15, authorising the Governor alone to suspend or arrest any military officer, &c., and remove him in pursuance of the sentence of a court-martial; and to remove, for *incompetency* or *misconduct*, all civil officers who receive appointment from the Executive *for term of years*, or, in other words, such civil officers as, by sec. 11, he can appoint, and as hold their office for two years, &c., under sec. 14. A justice of

the peace cannot be said to hold for a term of years; he holds from election to election, or from the time he qualifies until the time his regularly elected successor qualifies, and it may be, where he fills a vacancy, only for a few months or less. The argument, that the words, "term of years," are used in this sec. 15 in contradistinction to appointments during good behavior, or for life, is without weight or point, inasmuch as there are now, under the present Constitution, no appointments for life or during good behavior. There could, therefore, be no necessity to use these words for that purpose. This sec. 15, then, does not, in our view, apply, in any degree, to the case of a justice of the peace, certainly not more so than to a judge of the Circuit court or Court of Appeals, who might be appointed to fill a vacancy, and when made to apply to the latter, the absurdity of the doctrine is apparent.

But admitting, for argument, that it does apply to justices of the peace, still the authority cannot be exercised wantonly or capriciously. It is not even confided to the Governor's discretion, though a sound discretion, but it is restricted to cases of "*incompetency or misconduct*" of the incumbent; and the very introduction of these words negatives the idea that the civil officers of the State were dependent upon the whim or caprice of the Governor, or that the tenure, by which they held, was abject submission to the views and interests of that officer. Whatever might be the motive which prompted the appointment, when made the officer was ever afterwards to be free from executive control, or dictation or influence; and this condition of independence is especially necessary in the case of judicial officers, who should be free from all influences that might lead them to pervert the ends of justice. Now there is no allegation or pretence of incompetency or misconduct, on the part of Owens, to be found in the statement of facts, or in any other part of the record. The appellant does not even base his claim upon any such imputation. Governor Hicks, in the nomination of Cantwell, does not place it on any such ground. Even if the incompetency or misconduct need not appear from a judicial investigation, which we contend it should, surely there should be some charge of the kind, some-

where, to justify or render constitutional the removal of Owens for that cause. This objection obtains nowhere, and did not form, to any extent, the reason for the appointment of Cantwell. It was, as we think, the exercise of power without constitutional sanction, and had, for its excuse, no other provocation but a difference in political sentiment.

We conclude, therefore, that Owens is entitled to hold the office, and should be sustained in his claim by this court.

TUCK, J., delivered the opinion of this court.

This case comes before us upon an agreement of facts, to determine which of the parties can rightfully exercise the functions of Justice of the Peace in one of the districts of Cecil county.

If the solution of the question depended on the 19th sec. of the 4th Art. of the Constitution, there would be no room for doubt. It is expressly declared that, "in the event of a vacancy in the office of Justice of the Peace the Governor shall appoint a person to serve until the next regular election of said officers." But it is said that this clause must be construed in connection with the 12th and 15th sections of the second Article; under the former of which it is claimed, that the appointment to a vacancy in the office of Justice of the Peace can only be made by the Governor and Senate, and under the latter, that he has the power of removal of the officer so appointed. To neither of these propositions can we assent. The second Article defines the power and duties of the Executive Department; the fourth relates to the Judiciary. The eleventh section of the second Article provides, that the Governor and Senate shall appoint all civil and military officers of the State, whose appointment or election is not otherwise provided for. The office of Justice of the Peace, cannot be supplied under this clause, because the 19th sec. of the 4th Art. provides for an election by the people. But it is contended that when a vacancy occurs it must be filled according to the 12th sec. of the second Article, that is, by the Governor and Senate, as therein specified. If this interpretation be adopted, it will deprive the clause in the 19th sec. of Art. 4,

29     v. 14.

which relates to vacancies in this office, of all effect whatever, and impute to the Convention a design to place the office of Justice of the Peace, in respect to filling vacancies, on a footing with other offices, when their plain language admits of a different construction. Such a purpose might readily have been accomplished by uniting Justices of the Peace with other branches of the Judiciary, in the 25th and 26th sections of the same Article, which makes provision for filling vacancies in the offices of Judges in the courts of law and the orphans courts, and as this was not done, we think the 19th section should rather be contrasted with the 25th and 26th of the same Article, as indicating a different intention as to the mode of filling vacancies, than controlled by the sections cited from the second Article. Where the Constitution speaks in plain language, in reference to a particular matter, we have no right to place a different meaning on the words employed, because the literal interpretation may happen to be inconsistent with other parts of the instrument in relation to other subjects. Courts are sometimes required, in ascertaining the sense in which certain words may have been used, to give them effect according to the intent gathered from the whole instrument, but that rule cannot be admitted here. The language is too plainly written to receive the construction, that, although the Constitution declares that in the event of a vacancy in this office the Governor shall fill it, the Convention and People designed that he should do so only with the concurrence of the Senate. The 19th section creates the office, and provides for its continuance in case of vacancy, by words having no connection with other clauses; and for its interpretation needs no aid from other portions of the Constitution.

Nor can the appellant's claim derive any support from the 15th sec. of the 2nd Art., which confers on the Governor the power of removal. We have no idea that the Convention designed to make any of the officers of the government, discharging judicial functions, dependent on the will of the Executive. They derive their powers originally from the people. When provision is made for filling vacancies in another mode, it results from the necessity of the case, and is allowed for con-

venience; the question being remitted to the people at the earliest practicable time. In no case is the power of removal of such officers conferred on the Governor, except by the 30th Art. of the Bill of Rights, and the 4th and 9th secs. of Art. 4, upon an address of the General Assembly. If the power exists in the present case, might it not be exercised with as much propriety in reference to the judges of courts and all other offices in which the Governor has power to fill vacancise ? for the appointment of a judge until the next election of delegates, is as much an appointment for a term of years as that of a Justice of the Peace until the next regular election of said officers. This would be the inevitable result of the argument, but for the clauses above referred to, which provide for the removal of judges. If it be conceded that the Constitution does not provide for the security of the citizen against incompetency and misconduct of this class of officers, it does not follow that the Governor possesses the power to remove them for such cause. His authority, under the 15th sec. of the 2nd Art., applies to such offices as the executive has power to fill, by original appointment for terms of years, and it does not embrace justices of the peace. It would be contrary to the nature of our institutions, and affect the independence of the judiciary, if he had the power: as it is not conferred in terms by the Constitution, the exercise of it cannot be sanctioned by mere construction.

*Judgment affirmed.*

(Decided July 15th, 1859.)